# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JANE JONES,**<br><br>　　**Plaintiff,**<br><br>　　v.<br><br>**LIBERTY CORPORATE CAPITAL LIMITED (for and on behalf of SYNDICATE 4472), FAVOR & COMPANY, JOHN & JANE DOES (#1-10) fictitious parties, XYZ CORPS. (#1-10) fictitious parties**<br><br>　　**Defendants.** | Civ. No. 22-06600 (KM) (MAH)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

　　Jane Jones was assigned a liability insurance policy that was issued by Liberty Corporate Capital Limited ("Liberty") and placed and administered by Favor & Company ("Favor"). Liberty refused to provide compensation under the policy. Jane Jones then sued Liberty and Favor to recover damages. Favor now moves to dismiss for lack of personal jurisdiction. (DE 16.)[1] For the following reasons, the motion to dismiss is **GRANTED**.

---

[1] 　　Certain citations to the record are abbreviated as follows:

　　DE = docket entry

　　Compl. = Complaint (DE 1-1)

　　Answer = Liberty's Answer to the Complaint (DE 15)

　　Mot. = Favor's Brief in Support of the Motion to Dismiss (DE 16-1)

　　Opp. = Jones's Opposition to the Motion to Dismiss (DE 19)

　　Reply = Favor's Reply in Support of the Motion to Dismiss (DE 20)

　　Curran Decl. = Robert M. Curran's Declaration in Support of the Motion to Dismiss (DE 16-2)

　　Curran Decl. Ex. A = Exhibit Attached to Curran's Declaration (DE 16-3)

## I. BACKGROUND

Jane Jones is a former student at Ramapo College who filed an action against Pi Kappa Alpha International Fraternity ("Pike"), the Mu Zeta chapter of Pike, and officers of Mu Zeta for failing to prevent and address sexual assaults that she suffered on the night of a fraternity party. (Compl. ¶¶ 17–39.)[2] Jones reached a settlement agreement with various Mu Zeta officers in that action, pursuant to which the Mu Zeta officers assigned their Liberty liability insurance policy to Jones. (*Id.* ¶¶ 41–42.) Liberty, however, declined to pay under the policy. (Answer ¶¶ 60, 81.) Jones therefore filed this suit against Liberty and Favor, asserting claims for breach of contract, breach of the covenant of good faith and fair dealing, and bad faith, as well as third party beneficiary claims. (Compl. ¶¶ 74–101.)

Liberty, an insurance provider that participates in the Lloyd's of London ("Lloyd's") marketplace, underwrote and issued the liability insurance policy at issue. (Answer ¶¶ 2, 5, 11.) Favor, on the other hand, placed and served as a claims administrator for the policy. (*Id.* ¶ 4.) The certificate of insurance thus lists Favor as the producer of the policy, with "JRFCO" as part of the policy number, Robert M. Curran as the signatory of the certificate, and "certain underwriters [at] Lloyd's" as the insurers affording coverage. (Whelan Decl. Ex. A.)[3] Moreover, as the claims administrator for the policy, Favor collected premiums from Pike (Curran Decl. ¶ 6), which were financed out of fees from

---

Whelan Decl. = Patrick J. Whelan's Declaration in Opposition to the Motion to Dismiss (DE 19-1)

Whelan Decl. Exs. A – E = Exhibits Attached to Whelan's Declaration (DE 19-2 – DE 19-6)

[2] The underlying action is *Jane Jones v. Pi Kappa Alpha International Fraternity, Inc. et al*, Civ. No. 16-7720. I provided a fulsome factual background in that action at DE 78 and DE 206.

[3] Curran is the President and CEO of Favor. (Curran Decl. ¶ 2.) The certificate of insurance was provided to local chapters and members of Pike (Whelan Decl. ¶ 6), but the document indicates that it "is issued as a matter of information only and confers no rights upon the certificate holder" (*id.* Ex. A).

chapters such as Mu Zeta (Whelan Decl. ¶ 3). In this role, Favor also sent letters to Mu Zeta officers located in New Jersey notifying them that the policy issued to Pike by certain underwriters at Lloyd's would not provide coverage for the claims in the underlying action. (Whelan Decl. Ex. C.) The policy itself, however, was negotiated, procured, and issued outside of New Jersey, and the premiums were paid outside of this State as well. (Curran Decl. ¶¶ 5–6.)

Favor is a "coverholder" that "underwrites, develops, and customizes" insurance programs for Lloyd's, which "is fully bound by [Favor's] decisions." *About*, FAVOR & COMPANY, https://favorandcompany.com/about/ (last visited Sep. 22, 2023). Favor has found "a specialized niche serving the insurance and risk management needs" of fraternities, and it has "initiated" a fraternity insurance program. (*Id.*) Favor publishes an online brochure about the program, which is addressed to fraternities, chapters, and officers, and which encourages claims and lawsuits to be directed to the company. (Whelan Decl. Ex. E.)[4] The standard policy for the program refers to chapters, defines the coverage territory as the entire United States, indicates that coverage is to be renewed through Favor, and contains a footer with the initials "JRF" and a copyright attribution to "James R. Favor." (*Id.* Ex. D.)[5] Nonetheless, Favor has no contractual relationships with local fraternity chapters or officers, including those in New Jersey. (Curran Decl. ¶ 7.)

Although Favor is organized in Colorado and maintains offices in Colorado and Illinois, it has obtained licenses to conduct insurance business in New Jersey. (Curran Decl. ¶¶ 2–3, Ex. A.) According to Curran, Favor only obtained the licenses "in the event they are ever needed," and it does not in fact

---

[4] Like the certificate of insurance, the online brochure indicates that it "has been prepared as information only" and "does not amend, extend, or alter the coverage afforded by the actual policies." (Whelan Decl. Ex. E.)

[5] So too, the standard policy generally references host schools and anticipates litigation in any federal district court with jurisdiction. (Whelan Decl. Ex. D.)

conduct insurance business or have property, employees, bank accounts, mailboxes, telephone listings, or lawsuits in this State (*id.* ¶¶ 8–12).

In this suit, Jones seeks to recover damages from Liberty and Favor, including compensatory damages for the settlement amounts due under the liability insurance policy. (Compl. ¶¶ 81, 86, 92, 101.) Liberty has filed an answer and counterclaims (DE 15), whereas Favor has moved to dismiss for lack of personal jurisdiction (DE 16).

## II.   DISCUSSION

A federal court may exercise personal jurisdiction over a defendant to the extent authorized by state law. Fed. R. Civ. P. 4(k)(1)(A). New Jersey provides for jurisdiction coextensive with constitutional due process. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4). Due process allows for general or specific jurisdiction. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020).

The plaintiff bears the burden of establishing sufficient facts to show that general or specific jurisdiction exists. *Marten v. Godwin*, 499 F.3d 290, 295–96 (3d Cir. 2007). Initially, a court accepts the plaintiff's allegations as true. *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). Where factual allegations are disputed, however, "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir. 1990) (citations omitted).

Here, Favor argues that this Court cannot exercise general jurisdiction because the company is not incorporated or headquartered in New Jersey and is only connected to this State through a pair of unused licenses. (Mot. at 5–6.) Favor also argues that I cannot exercise specific jurisdiction because it did not form a contractual relationship with Mu Zeta or its members, but merely furnished an insurance policy to Pike, which was negotiated, procured, issued, and financed outside of this forum. (*Id.* at 7–9.) I address the appropriateness of general and specific jurisdiction in turn below.

4

### A. General Jurisdiction

A court may exercise general jurisdiction over a defendant when the defendant has "continuous and systematic contacts with the forum state" such that it is "essentially at home" there. *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) (citations omitted). In general, a corporate defendant is "at home" only where it is incorporated or has its principal place of business. *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 383 (3d Cir. 2022) (citations omitted).

Favor is not at home in this forum, as it is organized outside New Jersey and maintains offices in other states. Nor does Favor's New Jersey license constitute continuous or systematic contact with this State, as "registration to do business and appointment of an agent do not create general jurisdiction." *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 178 n.4 (D.N.J. 2016).[6] Indeed, Jones makes no substantial argument that Favor has such continuous or systematic contact with New Jersey as to render it at home in this State. (Opp. at 10.) Accordingly, it is not controversial that this Court lacks general jurisdiction over Favor. I turn, then, to the more promising argument that the Court possesses specific jurisdiction in relation to Jones's particular claims.

### B. Specific Jurisdiction

A court may exercise specific jurisdiction over a defendant when the defendant has contacts with the forum, and the claims "arise out of or relate to those" contacts. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (citations omitted). The contacts cannot be "random, isolated, or fortuitous," and the defendant must undertake "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum." *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1024–25 (2021) (citations omitted).

---

[6] Even if these licenses were required for Favor to conduct its activities, I find that the activities conducted by Favor do not support a finding of personal jurisdiction (*see infra* II.B).

5

Favor has little to no direct contact with this forum. While Favor placed and served as a claims administrator for the liability insurance policy, it is not itself the insurer. The non-binding certificate of insurance and the letters sent to the Mu Zeta officers confirm this understanding; these documents recognize Favor's role in the policy but designate Lloyd's underwriters as the insurers. In any event, the policy was negotiated, procured, and issued outside of New Jersey, and the premiums were paid outside of this State as well.[7] The non-binding online brochure, the company website, the standard policy, and other documents may suggest that Favor was a coverholder, underwriter, or entity with intimate involvement in a fraternity insurance program that extended to chapters and officers throughout the country. But Favor has no contractual relationship with any local chapters or officers, including those in New Jersey, and the internet materials do not suggest otherwise. (*See* Reply at 6–7.)[8] In fact, Favor has no property or other interests in this State whatsoever.

At most, Favor sent letters to Mu Zeta officers located in New Jersey notifying them that coverage under Pike's Liberty policy would be denied for the claims in the underlying action. There is no indication that Favor made the coverage decision, played any role in that decision, or would have had any direct financial liability if coverage had been granted. Clearly, these items of correspondence were not intended to cultivate commercial ties in the state, but to convey information in connection with the existing contractual relationship between Liberty and Pike. The certificate of insurance may have been transmitted to Mu Zeta officers, but this likewise reflected an existing contractual relationship between Liberty and Pike, not the creation of new

---

[7] The indirect source of the premiums may have been fees that Mu Zeta paid to Pike, but Favor collected the premiums from Pike, and there is no indication that this collection process involved any chapters.

[8] To the extent Jones argues that Favor purposefully availed itself of this forum through its internet presence, the Third Circuit has clarified "the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world," *Toys 'R' Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003).

business ties with chapters or members. In other words, the letters and the certificate are isolated and fortuitous points of contact, as opposed to purposeful activities within the forum.[9]

*Ferguson v. Aon Risk Servs. Companies, Inc.*, Civ. No. 19-9303, 2020 WL 914702 (D.N.J. Feb. 26, 2020) is instructive here. In *Ferguson*, Aon "handled the policy placement, claims notification and related services" for a policy that insured Raydon. 2020 WL 914702, at *1. At the time, Aon was aware that the insurance policy was "intended to benefit Clarendon," a New Jersey company that was the largest source of business for Raydon. *Id.* at *2. Although Aon was "also registered to transact business in New Jersey," the court found that specific jurisdiction did not exist because the insurance policy was prepared and managed in other states. *Id.* at *6–7. Here too, Favor was registered to do business in New Jersey and may have been aware that the policy was intended to cover New Jersey chapters and members that were affiliated with Pike. But Favor was not the insurer; it placed the Liberty policy and administered claims from Pike, and it did so outside of the state. Like Aon, then, Favor cannot be subject to specific jurisdiction on the basis of its role as an insurance broker, even if its services proved useful in this forum.

Accordingly, I cannot exercise specific jurisdiction over Favor.[10]

## III. CONCLUSION

For the reasons set forth above, the motion to dismiss is **GRANTED**. A separate order will issue.

Dated: September 22, 2023

/s/ Kevin McNulty
_____
**Hon. Kevin McNulty
United States District Judge**

---

[9] Moreover, as assignors of the plaintiff, the Mu Zeta officers "cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

[10] Since I do not find sufficient contacts between Favor and the forum, I need not explore whether the contacts are sufficiently related to Jones's claims, or whether any considerations of justice or fairness preclude specific jurisdiction.